# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL J. SMITH,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1]<br>Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. 3:20-cv-00325-CLB<br><br>**ORDER DENYING MOTION TO REMAND AND GRANTING CROSS-MOTION TO AFFIRM**<br><br>[ECF Nos. 19, 20] |

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Michael J. Smith's ("Smith") application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. Currently pending before the Court is Smith's motion for reversal and/or remand, (ECF No. 19), and the Commissioner's cross-motion to affirm and opposition, (ECF No. 20). Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), (ECF No. 15), the Court concludes that the Commissioner's finding that Smith could perform other work that exists in significant numbers in the national economy was supported by substantial evidence. Therefore, the Court denies Smith's motion for remand, (ECF No. 19), and grants the Commissioner's cross-motion to affirm, (ECF No. 20).

**I.     STANDARDS OF REVIEW**

   **A.     Judicial Standard of Review**

This court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of

---

[1]     Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not

speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B.  Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of their claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform their prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits the individual from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence

establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four to determine whether the individual has the RFC to perform their past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform their past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any past relevant work, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the individual is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.     CASE BACKGROUND

### A.     Procedural History

Smith applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on October 20, 2016, and October 27, 2016, respectively, with an alleged disability onset date of October 1, 2016. (AR 274-281.) Smith's application was denied initially on February 17, 2017, and upon reconsideration on July 3, 2017. (AR 189-94, 197-207.) Smith subsequently requested an administrative hearing. (AR 208-209.)

On December 6, 2018, Smith and his attorney appeared at an in-person hearing before an ALJ. (AR 71-108.) An impartial vocational expert ("VE") and an impartial medical expert also appeared at the hearing by telephone. (*Id.*) The ALJ issued a written decision

on March 22, 2019, finding that Smith was not disabled because he could perform other work that exists in significant numbers in the national economy. (AR 25-38.) Smith appealed, and the Appeals Council denied review on April 2, 2020. (AR 1-6.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Smith filed a complaint for judicial review on June 2, 2020. (ECF Nos. 1-1, 5.)

### B. ALJ's Decision

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 25-38.) Ultimately, the ALJ disagreed that Smith has been disabled from October 1, 2016, the alleged onset date, through the date of the decision. (AR 37.) The ALJ held, based on Smith's age, education, work experience, and RFC, that Smith could perform other work that exists in significant numbers in the national economy. (*Id.*)

In making this determination, the ALJ first determined that Smith meets the insured status requirements of the Social Security Act through December 31, 2018. (AR 29.) The ALJ then went to step one of the five-step sequential evaluation, where the ALJ found Smith had not engaged in substantial gainful activity since the alleged onset date of October 1, 2016. (*Id.*) At step two, the ALJ found Smith had the following severe impairments: vision loss, dysfunction major joints and osteoarthritis – bilateral feet, Achilles' tendinosis (left foot), bilateral knees with meniscus tear, degenerative disc disease, thoracic spine, multiple lipomas and open wound. (AR 29-30.) At step three, the ALJ found Smith did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 30-31.)

Next, the ALJ determined Smith has the RFC to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) except:

[Smith] is able to occasionally climb stairs and ramps but never able to climb

> ladders or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. [Smith] would need to avoid concentrated exposure to extreme cold, and moving dangerous machinery, and avoid all exposure to unprotected heights. He should never drive a commercial vehicle.

(AR 31-36.)

The ALJ found Smith's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged; however, Smith's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 33.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, Smith's treatment history, and Smith's demonstrated abilities and reported activities. (AR 31-36.) The ALJ then determined that Smith is not capable of performing any past relevant work as actually or generally performed. (AR 36.)

Relying on the testimony of the VE, the ALJ determined that Smith's age, education, work experience, and RFC would allow her to perform other occupations existing in significant numbers in the national economy, such as: pantry good maker, short order cook, or caterer helper. (AR 37.) Accordingly, the ALJ held that Smith had not been under a disability since the alleged onset date of October 1, 2016, through the date of the decision, and denied Smith's claim. (AR 37.)

## III.  ISSUE

Smith seeks judicial review of the Commissioner's final decision denying DIB and SSI under Titles II and XVI of the Social Security Act. (ECF No. 19.) Smith raises a single issue for this Court's review: whether the ALJ properly rejected Smith's testimony concerning pain, symptoms, and level of limitation. (*Id.* at 6-14.)

## IV.  DISCUSSION

### A.  The ALJ articulated clear and convincing reasons for rejecting Smith's subjective testimony.

Smith argues that it is unclear how the medical evidence is inconsistent with Smith's testimony as the ALJ's recitation of the medical evidence fails to accurately portray Smith's

overall health, conservative treatment was an insufficient reason for rejecting Smith's testimony, and the ALJ improperly rejected Smith's testimony based on activities of daily living. (ECF No. 19 at 6-14.)

By contrast, the Commissioner argues that the ALJ provided multiple valid reasons for discounting Smith's testimony, namely that: (1) certain objective medical findings did not support the extent of his allegations; (2) Smith alleged disabling back pain, but denied back pain to his providers; (3) the conservative nature of his treatment was inconsistent with the extent of his alleged limitations; and (4) Smith's activities illustrated that he had greater functional abilities than alleged. (ECF No. 20 at 6-15.)

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

A review of the record shows the ALJ provided specific, clear, and convincing reasons for finding Smith's statements concerning the intensity, persistence, and limiting effects of his symptoms less than credible.

### 1.     Objective Medical Evidence

Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ relied on objective medical evidence that supports the RFC rather than Smith's allegations of pain. Although the ALJ cannot cherry pick objective medical evidence from the record, they can consider contrary objective medical evidence in making a credibility determination. Here, the ALJ provided a thorough summary of the medical evidence in which he highlighted specific objective findings that support the assigned RFC. (AR 31-36.) He also considered that Smith's treatment modalities have been effective at relieving his pain and other symptoms. (*Id.*) Further, the ALJ found that Smith's treatment was through conservative methods such as physical therapy and home exercise. (AR 753.) Thus, based on these findings, the ALJ assigned a reduced RFC with postural and environmental limitations. Accordingly, the Court finds the ALJ provided clear and convincing reasons for finding Smith not credible to the extent his testimony exceeds the RFC.

///

///

///

### 2.     Conservative Treatment and Inconsistent Statements Regarding Back Pain

"Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (conservative treatment "suggest[s] a lower level of both pain and functional limitation.")); *see also Gutierrez v. Commissioner of Social Sec. Admin.*, 671 Fed. Appx. 526 (9th Cir. 2016) (clear and convincing reasons to discount claimant's credibility included conservative treatment involving physical therapy, weight loss, and medications). The ALJ can also infer that a claimant's symptoms are, "not as all-disabling as . . . reported." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (finding a claimant's favorable response to conservative treatment undermined his "reports regarding the disabling nature of his pain."). However, "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exists." *LaPeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010). Conservative treatment "is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)).

Smith argues that he did not receive conservative treatment because he was approved for surgery, but it had not yet occurred, and thus, this an insufficient reason for rejecting his testimony. (ECF No. 19 at 12.) The ALJ found that Smith had treated certain pain symptoms, specifically back pain, with conservative measures such as physical therapy, though "he was apparently discharged because of ineffectiveness." (AR 33, 388, 391, 394-95, 664, 788, 792, 814.) The ALJ also noted, that despite Smith's allegations of "always" having back pain, Smith occasionally denied back pain to his providers. (AR 33, 382, 388, 456, 502, 517, 541, 555, 664.) Further, Smith was instructed as to other conservative treatment, such as home exercises to help with his left Achilles' tendinosis, but "he did not do them because he alleged pain." (AR 33, 599-603.) The ALJ

acknowledged that Smith's providers had proposed surgeries, but still found that he received conservative treatments, specifically as it related to his spine.

The ALJ's reliance on the conservative treatment and inconsistent statements regarding back pain are free of error. *Hanes v. Colvin*, 651 Fed.Appx. 703, 705 (9th Cir. 2016) (unpublished) ("the ALJ supported his conclusion with evidence of [claimant's] conservative treatment plan, which consisted primarily of minimal medication, limited injections, physical therapy, and gentle exercise") (citing *Parra*, 481 F.3d at 751); *Tommasetti*, 533 F.3d at 1039 (The ALJ may consider "prior inconsistent statements concerning the symptoms.").

### 3. Smith's Daily Activities

An ALJ may discredit a claimant's testimony when he reports participation in everyday activities indicating capacities that are transferable to a work setting. *See Molina*, 674 F.3d at 1112-13; 20 C.F.R. § 404.1529(c)(3)(i). Further, the inconsistency between a claimant's alleged symptoms and his daily activities, is sufficient to support a finding that a plaintiff was not entirely credible. *See Lingenfelter*, 504 F.3d at 1040 (in determining credibility, an ALJ may consider "whether claimant engaged in daily activities inconsistent with alleged symptoms"). Specifically, daily activities may be grounds for discrediting a claimant's testimony when a claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferrable to a work setting." *Fair v. Brown*, 885 F.2d 597, 603 (9th Cir. 1989). Even when such activities suggest some difficulty functioning, the ALJ may discredit a claimant's testimony to the extent they contradict claims of a totally debilitating impairment. *See Turner*, 613 F.3d at 1225.

Here, the ALJ also found Smith less credible because the account of his daily activities was inconsistent with his alleged limitations. (AR 33); *see Tommasetti*, 533 F.3d at 1039 (inconsistency between a claimant's alleged symptoms and his daily activities may be a clear and convincing reason to find a claimant less credible). Smith testified that he has trouble walking without bumping into objects due to his vision problems, that he can

generally walk for 5-10 minutes, stand for 60 minutes, sit for 60 minutes, lift and carry 20 pounds, and climb stairs to his second-floor apartment. (AR 32, 81-92.) He testified that he sometimes uses knee braces to help him walk, but he did not wear braces to the hearing as the braces make his ankles and legs swell. (*Id.*) He further testified that he still cooks at home but is reluctant to use knives. (*Id.*) Additionally, Smith reports that he can take care of his personal hygiene, do dishes, take out the trash, go grocery shopping, and drive. (AR 33, 81-92.) Based on these, and other findings, the ALJ determined Smith's subjective symptom testimony was inconsistent with his alleged impairments. (AR 31-36.)

Based on the above, the Court finds the ALJ provided "specific, clear and convincing" reasons supported by substantial evidence for discounting Smith's credibility as to his subjective limitations. *See Fair*, 885 F.2d at 604 ("Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.").

## V.      CONCLUSION

Having reviewed the Administrative Record as a whole and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds that the ALJ's decision was supported by substantial evidence.

Accordingly, **IT IS THEREFORE ORDERED** that Smith's motion to remand (ECF No. 19) is **DENIED**, and the Commissioner's cross-motion to affirm (ECF No. 20) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and **CLOSE THIS CASE**.

DATED: February 3, 2022         .

_____
**UNITED STATES MAGISTRATE JUDGE**